UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JORIE WIMBISH et al., | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil No. 15-1429(EGS) |
| DISTRICT OF COLUMBIA, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

On September 1, 2015, Plaintiff Jorie Wimbish, on behalf of her minor daughter, J.W.,[1] filed a Motion for Preliminary Injunction, Docket No. 3, seeking to invoke the "stay-put" provision of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(j), to require the District of Columbia ("the District") to fund J.W.'s placement at a private school during the pendency of all administrative and judicial proceedings in Plaintiffs' underlying IDEA case. Following a hearing on Plaintiffs' motion on October 8, 2015, the Court granted the motion, and requested supplemental briefing on the issue of whether the District would be required to fund 50% or 100% of Plaintiffs' cost of attendance at the private school.

---

[1] The minor shall be referred to as J.W., pursuant to Local Civil Rule 5.4(f)(2).

October 9, 2015 Minute Order. This Memorandum Opinion accompanies the Court's October 8, 2015 oral ruling and October 9, 2015 Minute Order, and resolves the outstanding issue regarding the District's funding obligation. For the following reasons, Plaintiffs' motion to require the District of Columbia to fund J.W.'s placement at Stuart Hall is **GRANTED.** The District shall fund 100% of Plaintiffs' cost of attendance at Stuart Hall, retroactive to the commencement of the 2015-2016 school year and continuously thereafter through the completion of all administrative and judicial proceedings in this matter, unless the parties otherwise agree.

I. BACKGROUND

J.W. is a 14-year-old student whose parents reside in the District of Columbia. Pls.' Mem. Supp. Mot. Prelim. Inj. ("Pls.' Mem."), Docket No. 3-1 at 1; Def.'s Mem. Opp. Mot. Prelim. Inj. ("Def.'s Mem. Opp."), Docket No. 9 at 2. Sometime in 2007 or 2008, J.W. was deemed eligible for special education services under the IDEA as a student with a disability under the classification "Other Health Impairment (ADHD)". Pls.' Mem. at 1; Def.'s Mem. Opp. at 2. From 2008 to 2014, D.C. Public Schools ("DCPS") funded J.W.'s placement at Kingsbury Day School ("Kingsbury"), a full-time special education day school. Pls.' Mem. at 2; Def.'s Mem. Opp. at 2. Early in the 2013-2014 school year, Ms. Wimbish and DCPS agreed that Kingsbury was too

restrictive a placement for J.W. and that she should transfer to a less-restrictive environment. Pls.' Mem. at 1; Def.'s Mem. Opp. at 2.

### A. June 2014 Individualized Education Program ("IEP")

In June of 2014, prior to the beginning of the 2014-2015 school year, Ms. Wimbish and representatives from DCPS met to develop an updated individualized education program ("IEP") for J.W. Pls.' Mem. Ex. 1, Docket No. 3-3 ("March HOD") at 8. The IEP states that J.W. experiences anxiety which causes disruptions to her school day. *See generally* Pls.' Mem. Ex. 3, Docket No. 3-5 ("2014 IEP"). The IEP recommended 30 hours per week of specialized instruction outside the general education environment and various classroom accommodations including preferential seating and small group testing. *Id.* at 13. Following the June 2014 meeting, there was some dispute between the parties as to the finality of the IEP developed that day. In July 2014, DCPS reached out to Ms. Wimbish to schedule another IEP meeting to revise or rewrite the June IEP. March HOD at 9. Ms. Wimbish believed that the June IEP was final and refused to meet with DCPS again. *Id.*

### B. January 5, 2015 Due Process Complaint

On January 5, 2015, Ms. Wimbish filed a "due process complaint" with DCPS' Office of Dispute Resolution alleging that DCPS failed to develop an appropriate IEP for J.W. for the 2014-

2015 school year and failed to propose an adequate school placement. *See generally id.* Ms. Wimbish, with the encouragement of DCPS officials, had enrolled J.W. at Stuart Hall, a private boarding school in Staunton, VA for the 2014-2015 school year. *Id.* at 9. The administrative complaint sought reimbursement from DCPS for J.W.'s cost of attendance.[2] *Id.*

In a decision issued by an Independent Hearing Officer ("Hearing Officer Determination" or "HOD"), dated March 29, 2015, the Hearing Officer found that DCPS had denied J.W. a free appropriate public education ("FAPE") for the 2014-2015 school year and ordered DCPS to fund 50% of Plaintiffs' tuition expenses at Stuart Hall for that year. *Id.* at 22. As the Hearing Officer explained:

> [T]he District may be required to pay for educational services obtained for a student by a student's parent if the services offered by the District are inadequate or inappropriate ("first criterion[]")[,] the services selected by the parent are appropriate ("second criterion"), and equitable considerations support the parent's claim ("third criterion"), even if the private school in which the parents have placed the child is unapproved.

---

[2] While Stuart Hall ordinarily costs approximately $45,000 in tuition annually, J.W. had received a substantial financial aid award of approximately $30,000, placing her cost of attendance at approximately $14,000 annually. *See* March HOD at 8.

*Id.* at 12 (citing *School Committee of the Town of Burlington v. Dep't of Educ., Mass.*, 471 U.S. 359 (1985); *Florence Cnty Sch. Dist. Four et al. v. Carter by Carter*, 510 U.S. 7 (1993)).

On the first criterion, the Hearing Officer determined that the District's proposed placement was inappropriate or inadequate, resulting in a denial of a FAPE for J.W. for the 2014-2015 school year. *Id.* at 14-16. First, the Hearing Officer found that the June 2014 IEP "clearly provides the Student with an inappropriately restrictive program" in contravention of the IDEA's requirement that children be placed in the "least restrictive environment" appropriate for their disability. *Id.* at 13-15 (citing 20 U.S.C. § 1412(a)(5); *N.T. v. Dist. of Columbia*, 839 F. Supp. 2d 29, 34-35 (D.D.C. 2012)). In the alternative, the Hearing Officer held that, if the June 2014 IEP was merely a "draft" IEP, as DCPS had argued, then J.W. had "no IEP at all for the 2014-2015 school year." *Id.* at 15. Under either scenario, the Hearing Officer concluded that DCPS denied J.W. a FAPE for the 2014-2015 school year. *Id.*

On the second criterion, the Hearing Officer found that Ms. Wimbish's enrollment of J.W. at Stuart Hall was "proper" under the Act. *Id.* at 18. Even though Stuart Hall was a "general education school," the Hearing Officer found that it provided J.W. the services she required, such as small class sizes, individualized interventions, testing accommodations,

5

psychiatric counseling, and "check-ins" with a social worker *Id.* at 17.

Finally, on the third criterion, that is, whether the equitable considerations supported the parent's claim, the Hearing Officer ordered a 50% reduction in DCPS's obligation to fund J.W.'s placement at Stuart Hall. *Id.* at 21. He found that Ms. Wimbish's refusal to meet with DCPS to rewrite or revise the June 5, 2014 IEP merited a 50% reduction in the reimbursement award. *Id.* However, he refused to deny tuition reimbursement altogether, finding that Ms. Wimbish did cooperate in the IEP process until June of 2014. *Id.* Neither party appealed the March 29, 2015 Hearing Officer Determination.

**C. July 2015 IEP Meeting**

In July 2015, after the 2014-2015 school year had concluded, DCPS contacted Ms. Wimbish to schedule an IEP meeting for J.W. prior to the start of the 2015-2016 school year. Pls.' Mem. Ex. 10, Docket No. 3-12 at 2. Ms. Wimbish and her counsel met with DCPS on August 18, 2015. Pls.' Mem. at 7; Def.'s Mem. Opp. at 3. At the meeting, DCPS informed Ms. Wimbish that it had determined that J.W. was no longer eligible for special education services, and that rather than create an IEP, the meeting would instead develop a § 504 plan for accommodations.[3]

---

[3] "Section 504 plan" refers to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, which prohibits programs

6

Pls.' Mem. at 7; Def.'s Mem. Opp. at 3. Ms. Wimbish and her counsel indicated that they were surprised to learn that DCPS had terminated J.W. from special education services, as they expected to proceed with an IEP meeting that day. Pls.' Mem. at 8. Ms. Wimbish felt unprepared to participate in a § 504 plan meeting and asked that the meeting be adjourned. *Id.* DCPS continued the meeting in the absence of Ms. Wimbish and her counsel and developed a § 504 plan for J.W. Def.'s Mem. at 4-5.

### D. August 20, 2015 Due Process Complaint

On August 20, 2015, Ms. Wimbish, through counsel, filed a second due process complaint challenging J.W.'s removal from special education services. Pls.' Mem. at 9. The complaint alleges that DCPS (1) failed to evaluate J.W. prior to exiting her from formal special education services; (2) failed to provide a prior written notice prior to changing the student's eligibility; (3) failed to have an IEP in place prior to the beginning of the 2015-2016 school year; (4) failed to provide an appropriate placement for J.W. prior to the beginning of the

---

funded by the federal government, from discriminating on the basis of disability. As one court explained, "[t]hough IEPs and 504 plans are conceptually similar in that both are designed to provide a free appropriate public education to students with a disability, the two plans are held to different standards . . . . An IEP is sufficient to satisfy the free appropriate public education requirement under Section 504, but a 504 plan will not necessarily satisfy the same requirement under the IDEA." *K.D. v. Starr*, 55 F. Supp. 3d 782, 785 n.3 (D. Md. 2014).

7

2015-2016 school year; and (5) retaliated against Ms. Wimbish for exercising her right to litigate claims through a due process hearing and for contacting the D.C. City Council. *Id.*

Upon learning that DCPS did not intend to fund any portion of J.W.'s placement at Stuart Hall during the pendency of J.W.'s IDEA case, Plaintiffs filed a motion for a "stay-put" injunction on September 1, 2015. *See generally* Pls.' Mot., Docket No. 3; Pls.' Mem. Ex. 15 at 3. The motion sought to "maintain J.W.'s placement in order to protect her right to receive a free and appropriate public education ("FAPE").". Pls.' Mot. at 1.[4]

## II. LEGAL STANDARD

The IDEA provides that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child . . . ." 20 U.S.C. § 1415(j). Commonly referred to as

---

[4] The Hearing Officer issued his decision on Plaintiffs' August 20, 2015 due process complaint on November 16, 2015. Pls.' Rep. Sup. Mot. Prelim. Inj., Docket No. 14 at 1. On December 16, 2015, Plaintiffs filed a partial appeal of the Hearing Officer's Determination, which is the subject of another action before this Court. *See Wimbish et al. v. Dist. of Columbia*, 15-CIV-2182 (EGS). The ultimate merits of Plaintiffs' partial appeal of the Hearing Officer's Determination have no legal bearing on Plaintiffs' motion for a preliminary injunction, and need not be discussed here. *See District of Columbia v. Vinyard*, 901 F. Supp. 2d 77, 86-87. As the two cases involve common questions of law or fact and the identical parties, the Court will *sua sponte* consolidate the two cases under Case No. 15-1429. *See* Fed. R. Civ. P. 42(a).

the "stay-put provision," this section requires the educational agency to maintain a disabled child in his or her "current educational placement" through both administrative and judicial proceedings, including an appeal from an administrative decision following a due process hearing. 34 C.F.R. § 300.518(a). The purpose of the stay-put injunction is to prevent educational authorities from unilaterally moving a child from his or her current placement. *Alston v. Dist. of Columbia*, 439 F. Supp. 2d 86, 88 n.1 (D.D.C. 2006).

A parent can invoke the stay-put provision to request injunctive relief when a school system proposes a "fundamental change in, or elimination of, a basic element of the then-current educational placement." *Dist. of Columbia v. Vinyard*, 901 F. Supp. 2d 77, 83 (D.D.C. 2012)(citing *Lunceford v. Dist. of Columbia Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C. Cir. 1984)) (alterations omitted). As courts have consistently held, maintenance of a child's current placement includes full payment for the program in which the student is placed, and a failure by the school district to fund a child's current educational placement constitutes grounds for stay-put injunctive relief. *See e.g., Petties v. Dist. of Columbia*, 881 F. Supp. 63, 66 (D.D.C. 1995).

In evaluating requests for injunctive relief under the stay-put provision, the traditional four-part test for a

preliminary injunction does not apply. *Dist. of Columbia v. Oliver*, 991 F. Supp. 2d 209, 212 (D.D.C. 2013); *see also Vinyard*, 901 F. Supp. 2d at 84 (holding that a school's "unilateral change" to a student's current educational placement entitles movants to "enforcement of their stay-put rights pursuant to § 1415(j), irrespective of their ability to demonstrate irreparable harm, likelihood of success on the merits, or a balancing of equities in their favor."). Rather, the party invoking the stay-put provision must show that (1) proceedings under the IDEA are pending; and (2) prevention of a change in the "then-current educational placement of the child is sought." *Eley v. Dist. of Columbia*, 47 F. Supp. 3d 1, 8 (D.D.C. 2014).

### III. DISCUSSION

There is no dispute that IDEA proceedings are pending in this matter. *See* Def.'s Mem. Opp. at 7. Accordingly, the question for the Court was whether Plaintiffs' motion sought prevention of a change in J.W.'s "current educational placement." *See Eley*, F. Supp. 3d at 8. Plaintiffs argued that DCPS is proposing a fundamental change in J.W.'s education placement – namely, that she be removed from special educational services altogether. Pls.' Mem. at 10. The District did not dispute that it sought to remove J.W. from special education

10

services,[5] rather the District argued that Plaintiffs failed to demonstrate that Stuart Hall is J.W.'s "current educational placement" for purposes of this stay-put injunction. Def.'s Mem. Opp. at 9.

### A. Stuart Hall is J.W.'s Current Educational Placement for Purposes of This Stay-Put Injunction

As the D.C. Circuit has observed, "the issuance of an injunction under this 'stay put' provision depends predominantly on the determination of what constitutes [the Student's] 'current educational placement.'" *Leonard v. McKenzie*, 869 F.2d 1558, 1563-64 (D.C. Cir. 1989). The IDEA does not define the term "then-current educational placement," but the courts have explained that a child's educational placement, "falls somewhere between the physical school attended by a child and the abstract goals of a child's IEP." *Johnson v. Dist. of Columbia*, 839 F. Supp. 2d 173, 177 (D.D.C. 2012). Typically, "the dispositive

---

[5] Indeed, the District devoted substantial space in its brief to the argument that J.W. no longer requires special education services. *See* Def.'s Mem. Opp. at 3-5, 10-11. As the ultimate merits of Plaintiffs' IDEA action have no bearing on the Court's analysis under the stay-put provision, the Court cannot consider these arguments here. *See Vinyard*, 901 F. Supp. 2d at 87 ("courts have made patently clear that a stay-put determination must be made without consideration of the merits of the underlying dispute. This is because the stay-put provision represents Congress' policy choice that all [disabled] children, regardless of whether their case is meritorious or not, are to remain in their then current educational placement until the dispute with regard to their placement is ultimately resolved")(internal citations and quotations omitted).

factor in deciding a child's 'current educational placement' should be the IEP . . . actually functioning when the 'stay put' is invoked." *Id.* (alterations omitted). Where the child lacks a functioning IEP and attends a non-public school selected by the parent, the non-public school qualifies as the "then-current educational placement" for stay-put purposes "so long as the hearing officer made findings on the merits that the school system had failed to provide a FAPE and the private program chosen by the parents was appropriate." *Vinyard*, 901 F. Supp. 2d at 86; *see also Eley*, 47 F. Supp. 3d at 17; *Oliver*, 991 F. Supp. 2d at 214.

Here, the March 29, 2015 HOD establishes that Stuart Hall is J.W.'s then-current placement. First, the Hearing Officer found that DCPS had denied J.W. a FAPE by either providing her an impermissibly restrictive IEP or by providing her no IEP at all. *See* March HOD at 14-16. Second, the Hearing Officer determined that Stuart Hall was an appropriate placement for J.W. under the Act. *Id.* at 16-18. Reviewing the evidence before him, the Hearing Officer found that Stuart Hall provided J.W. with the accommodations and individualized interventions she required, including preferential seating, testing accommodations, psychiatric counseling, and check-ins with a social worker. *Id.* at 17. Further, the Hearing Officer found that DCPS had presented no evidence that Stuart Hall was

12

inappropriate or inadequate in any way. *Id.* at 18. Accordingly, the Hearing Officer concluded that Ms. Wimbish's selection of Stuart Hall was "proper" under the Act. *Id.*

The District argued that the March 29, 2015 HOD is a mere "reimbursement order" rather than a determination on the merits that Stuart Hall is an appropriate placement for J.W. Def.'s Surrep., Docket No. 10 at 2. That distinction has not persuaded judges of this Court; a reimbursement order may be sufficient to establish placement for stay-put purposes as long as the Hearing Officer has set forth a finding on the merits that the school is appropriate for the student. *Vinyard*, 901 F. Supp. 2d at 86; *Oliver*, 991 F. Supp. 2d at 216-17. The Hearing Officer's clear findings that Stuart Hall provided J.W. with the services and accommodations she required are sufficient to establish Stuart Hall as J.W.'s then-current educational placement.[6]

---

[6] Further weakening their position, the District provided no reasonable alternative placement for J.W. for the pendency of these proceedings. The District argued the appropriate stay-put placement for J.W. is "technically" Kingsbury, as the last location where J.W. had a functioning IEP. Defs.' Mem. at 8. However, the District freely acknowledged that Kingsbury is no longer appropriate for J.W. and that she requires a less restrictive environment. *Id.* at 8-9. The District proposed that J.W. attend Cardozo High School, a public general education campus, "in light of the fact that J.W. no longer qualifies for special education services." *Id.* at 10. This argument goes to the underlying merits of J.W.'s case and may not be considered when ruling on a motion for a stay-put injunction. *See Vinyard*, 901 F. Supp. 2d at 87.

13

Finally, The District argued that Stuart Hall cannot be an appropriate placement for J.W. because the school lacks a Certification of Approval ("COA") from the Office of the State Superintendent ("OSSE"). Def's. Mem. Opp. at 10. This argument also fails. The appropriateness of a student's placement under the IDEA does not turn on formalities or official seals of approval, but rather on whether the education "provided by the private school is reasonably calculated to enable the child to receive educational benefits." *Leggett v. Dist. of Columbia*, 793 F.3d 59, 70-71 (D.C. Cir. 2015). Supreme Court precedent clearly establishes that a parent may be entitled to reimbursement for private school placement, even where the school is not on the state's list of approved schools. *Florence Cty. Sch. Dist. Four v. Carter by Carter*, 510 U.S. 7, 11, 14 (1993); *see also Eley*, 47 F. Supp. 3d at 18 n. 13 (finding a school appropriate for purposes of a stay-put injunction, even where the school was not certified by OSSE). The March HOD found that Stuart Hall was an appropriate placement for J.W. even though the school was not certified by OSSE. This finding of appropriateness is sufficient: Stuart Hall is J.W.'s then-current educational placement for purposes of this stay-put injunction.

    **B. The District is Obligated to Fund 100% of J.W.'s Cost of Attendance at Stuart Hall During the Pendency of These Proceedings**

14

Once the child's "then-current educational placement" has been established, as J.W.'s was on October 8, 2015, "financial responsibility on the part of the local school district follows." *See Susquentia Sch. Dist. v. Raelee S.*, 96 F.3d 78, 83 (3d Cir. 1996); 20 U.S.C. § 1401(9)(A)("The term 'free appropriate public education' means special education and related services that have been provided *at public expense*, under public supervision and direction, *and without charge*.")(emphasis added); *see also Vinyard*, 901 F. Supp. 2d at 83 ("[a]s courts have consistently held, maintenance of a child's current placement includes full payment for the program in which the student is placed . . .").

In this case, the March 2015 HOD reduced the District's obligation to pay by 50% for the 2014-2015 school year based on equitable considerations relating to Ms. Wimbish's conduct in June of 2014. March HOD at 21. The Plaintiffs encourage the Court to limit the 50% reduction to the 2014-2015 school year, arguing that the equitable considerations leading to the reduction were limited to that time period. Pls.' Supp. Mem., Docket No. 11 at 6. The District argues that their obligation to maintain J.W.'s placement requires the District to continue to fund 50% of Plaintiffs' cost of attendance, and no more. Def.'s Opp. Pls.' Supp. Mem., Docket No. 13 at 1-2. Neither party identified an analogous case in support of their position.

15

The Court agrees with Plaintiffs that the District must fund 100% of the Plaintiffs' cost of attendance at Stuart Hall during the pendency of all administrative and judicial proceedings in this case. First, the HOD's reduction in tuition reimbursement was expressly limited to the 2014-15 school year. *See* March HOD at 22 ("Respondent shall fund 50% of the Petitioner's obligation to pay for the Student's placement at [Stuart Hall] for the 2014-2015 school year."). Second, the 50% reduction was based on conduct that took place in 2014, and the HOD provides no indication the Hearing Officer intended to punish Ms. Wimbish for that conduct beyond the 2014-2015 school year. *See id.* at 21-22. Finally, Ms. Wimbish's financial situation, strained immensely by the District's failure to provide her with *any* reimbursement for the 2015-2016 school year thus far, no longer allows her to fund 50% of J.W.'s tuition at Stuart Hall. *See* Wimbish Dec., Docket No. 11-2 at 1-2. The guarantees of the stay-put provision are rendered hollow if such guarantees are conditioned on the parent's ability to pay for their child's private placement. In order to ensure that J.W. receives a *free* appropriate public education during the pendency of all administrative and judicial proceedings in her IDEA case, the District must fund 100% of Plaintiffs' cost of attendance at Stuart Hall until the conclusion of these proceedings, unless the parties otherwise agree.

**IV.   CONCLUSION**

For the foregoing reasons, Plaintiffs' motion to require the District of Columbia to fund J.W.'s placement at Stuart Hall is **GRANTED**, and the District shall fund 100% of Plaintiffs' cost of attendance at Stuart Hall retroactive to the beginning of the 2015-2016 school year and continuously thereafter through the completion of all administrative and judicial proceedings in this matter, unless the parties otherwise agree. An appropriate order accompanies this Memorandum Opinion.

**Signed:     Emmet G. Sullivan
             United States District Judge
             December 22, 2015**