**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                )
JORIE WIMBISH, *et al.*,         )
                                )
              Plaintiffs,        )
                                )
         v.                      ) Civil Action No. 15-1429 (EGS)
                                )
DISTRICT OF COLUMBIA,            )
                                )
              Defendant.         )
_____)
                                )
JORIE WIMBISH, *et al.*,         )
                                )
              Plaintiffs,        )
                                )
         v.                      ) Civil Action No. 15-2182 (EGS)
                                )
DISTRICT OF COLUMBIA,            )
                                )
              Defendant.         )
_____)

## MEMORANDUM OPINION

Pending before the Court is plaintiff Jorie Wimbish's motion for attorneys' fees and costs pursuant to the attorneys' fees provision of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* Ms. Wimbish seeks to recover attorneys' fees and costs arising from her successful obtainment of a "stay-put" order from this Court. That stay-put order mandates that the District of Columbia fund the entirety of the costs arising from Ms. Wimbish's minor daughter, J.W., attending the Stuart Hall School during the pendency of an

1

underlying IDEA case between Ms. Wimbish and the District of Columbia Public Schools ("DCPS").

Upon consideration of the motion, the response and reply thereto, the parties' supplemental briefs, the entire record, and for the reasons stated below, Ms. Wimbish's motion is **GRANTED IN PART** and **DENIED IN PART**. The Court finds that the "reasonable hourly rates" proposed by Ms. Wimbish are appropriate, but will not, at this juncture, order reimbursement for her attorneys' preparation of the instant motion for attorneys' fees; Ms. Wimbish has indicated that she plans to file a supplemental motion related to "fees-on-fees" litigation. Accordingly, the Court ultimately awards Ms. Wimbish $50,795.85.

## I.  Background

The factual background of this case is set out in *Wimbish v. District of Columbia*, 153 F. Supp. 3d 4 (D.D.C. 2015) and will not be rehashed in full again here. In most relevant part, prior to the 2014-2015 school year, Ms. Wimbish enrolled J.W.——who had been deemed eligible for special education services under the IDEA——at Stuart Hall School, a private boarding school in Staunton, Virginia. 153 F. Supp. 3d at 7. On January 5, 2015, Ms. Wimbish filed an IDEA administrative due process complaint with the Office of Dispute Resolution of DCPS alleging that DCPS had failed to develop an appropriate individualized education program ("IEP") for J.W. for the 2014-2015 school year and had

failed to propose an adequate school placement. *Id.* The complaint sought reimbursement from DCPS for J.W.'s cost of attendance at Stuart Hall. *Id.*

In a March 29, 2015 decision, an administrative Hearing Officer concluded that DCPS had denied J.W. a free appropriate public education ("FAPE") for the 2014-2015 school year and ordered DCPS to fund 50% of Stuart Hall expenses for that school year. *Id.* at 8. The Hearing Officer relied on alternative bases to conclude that J.W. had been denied a FAPE. First, if J.W.'s most recent IEP——one that the parties had developed at a June 2014 meeting and one that Ms. Wimbish believed was not a mere draft but rather was a final, operative IEP, *id.* at 7——was operative, it was improper because it provided J.W. with an inappropriately restrictive program. *Id.* at 8. Alternatively, if the June 2014 IEP was just a "draft" IEP, as DCPS had argued, then J.W. had improperly not been provided an IEP for the 2014-2015 school year. *Id.* at 8. The Hearing Officer also found that Ms. Wimbish's enrollment of J.W. at Stuart Hall was proper, but only mandated that DCPS cover 50% of the Stuart Hall expenses because, following the June 2014 IEP meeting, Ms. Wimbish had refused to meet with DCPS to rewrite or revise the IEP that had been prepared at the June 2014 meeting. *Id.* at 8.

After the 2014-2015 school year ended, DCPS contacted Ms. Wimbish to schedule a meeting to prepare J.W.'s IEP for the

2015-2016 school year. *Id.* But at their August 18, 2015 meeting,

DCPS informed Ms. Wimbish that J.W. was no longer eligible for

special education services. *Id.* Accordingly, DCPS explained that

the meeting would not result in an updated IEP but rather would

be aimed at developing a plan for accommodations under § 504 of

the Rehabilitation Act of 1973. *Id.* at 8-9. Surprised by this

turn of events, Ms. Wimbish asked that the meeting be adjourned,

but DCPS continued the meeting in her and her counsel's absence

and developed a § 504 plan for J.W. *Id.* at 9.

On August 20, 2015, Ms. Wimbish filed an administrative due

process complaint challenging J.W.'s removal from special

education services. *Id.* at 9. Upon learning that DCPS did not

intend to fund any portion of J.W.'s placement at Stuart Hall

during the pendency of this IDEA case, Ms. Wimbish filed a

motion for a stay-put injunction in this Court on September 1,

2015. *Id.* The IDEA's "stay-put provision" requires a local

educational agency to maintain a child in his or her "current

educational placement" during the pendency of IDEA

administrative and judicial proceedings. *Id.* at 9-10 (citing 34

C.F.R. § 300.518(a)). This Court granted Ms. Wimbish's motion,

as it determined that Stuart Hall is J.W.'s "current educational

placement" and that the District is obligated to fund 100% of

J.W.'s attendance at Stuart Hall, retroactive to the

commencement of the 2015-2016 school year, during the pendency

of all administrative and judicial proceedings arising from Ms. Wimbish's August 20, 2015 administrative due process complaint. *Id.* at 10-13.

On November 16, 2015, a Hearing Officer issued a decision concerning Ms. Wimbish's August 20, 2015 due process complaint, and Ms. Wimbish's partial appeal of that decision, filed in this Court on December 16, 2015, remains pending following the conclusion of briefing on February 9, 2017.[1] *See id.* at 9 n.4. Meanwhile, in January 2016, Ms. Wimbish filed a motion for attorneys' fees and costs related to the stay-put portion of this litigation. *See* Mot. for Attorneys' Fees, ECF No. 17. That motion is ripe and ready for the Court's adjudication.

## II.  Analysis

The IDEA provides that a court "in its discretion, may award reasonable attorneys' fees . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i). Although this Court has yet to rule on Ms. Wimbish's partial appeal of the Hearing Officer's November 16, 2015 decision, the District does not dispute that Ms. Wimbish is "a prevailing party who is the parent of a child with a disability" as concerns the stay-put portion of this IDEA

---

[1] The Court consolidated Ms. Wimbish's partial appeal of the Hearing Officer's decision with the case in which her motion for a stay-put injunction had earlier been filed. *Wimbish*, 153 F. Supp. 3d at 9 n.4.

litigation. *See generally* Def.'s Opp. to Pl.'s Mot. for Attorneys' Fees ("Def.'s Opp."), ECF No. 18 (omitting any argument that Ms. Wimbish is not a "prevailing party"); *see also Douglas v. District of Columbia*, 67 F. Supp. 3d 36, 41-42 (D.D.C. 2014) (holding that a party that obtained a stay-put order was a "prevailing party"); *Laster v. District of Columbia*, No. 05-1875, 2006 WL 2085394, at *2-3 (D.D.C. July 25, 2006) (same). The dispute here thus narrows to whether the attorneys' fees that Ms. Wimbish seeks from the stay-put litigation constitute "reasonable attorneys' fees."

That "reasonable attorneys' fees" determination depends on a three-part analysis: "First, the court must determine the number of hours reasonably expended in litigation. Second, it must set the reasonable hourly rate. Finally, it must determine whether use of a multiplier is warranted." *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015) (internal citations and quotation marks omitted). The District does not challenge the hours that Ms. Wimbish's attorneys devoted to the stay-put litigation, *see generally* Def.'s Opp., ECF No. 18, and the IDEA prohibits application of any multiplier. 20 U.S.C. § 1415(i)(3)(C). Accordingly, the dispute here narrows further still: All that needs to be determined is the attorneys' "reasonable hourly rate."

"Whether an hourly rate is reasonable turns on three sub-elements: (1) the attorney[s'] billing practices, (2) the attorney[s'] skill, experience, and reputation and (3) the prevailing market rates in the relevant community." *Eley*, 793 F.3d at 100 (internal quotation marks omitted). All that is in dispute here is the prevailing market rates in the relevant community. *See generally* Def.'s Opp., ECF No. 18; Pl.'s Reply, ECF No. 19. Ms. Wimbish contends that she is entitled to be reimbursed at the rates provided for her attorneys under the *Laffey* Matrix maintained by the United States Attorney's Office for the District of Columbia ("USAO *Laffey* Matrix").[2] Pl.'s Mem. in Supp. of Mot. for Attorneys' Fees and Costs ("Pl.'s Mem. Supp."), ECF No. 17-1 at 6-11. The District, on the other hand, contends that the rates sought are unreasonably high and proposes 75% of the USAO *Laffey* Matrix as the reasonable hourly rates. Def.'s Opp., ECF No. 18 at 6-11.

Ms. Wimbish, the fee applicant here, bears the initial burden of justifying the reasonableness of the rates that she proposes. *Eley*, 793 F.3d at 100. She may meet that burden "upon either of two showings": First, she can "demonstrate that IDEA

---

[2] "The *Laffey* Matrix is 'a schedule of charges based on years of experience developed in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *rev'd on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert denied*, 472 U.S. 1021, 105 S. Ct. 3488, 87 L. Ed. 2d 622 (1985).'" *Merrick v. District of Columbia*, 134 F. Supp. 3d 328, 332 n.1 (D.D.C. 2015).

proceedings qualify as 'complex federal litigation,' to which *Laffey* rates presumptively apply." Second, alternatively, she "may demonstrate that rates customarily charged by IDEA practitioners in the District are comparable to those provided under the US[AO] *Laffey* Matrix." *Flood v. District of Columbia*, 172 F. Supp. 3d 197, 210 (D.D.C. 2016); *see also Reed v. District of Columbia*, 843 F.3d 517, 521 (D.C. Cir. 2016) (describing these "two separate, but inter-related, approaches to providing evidence of prevailing market rate").

The Court finds that Ms. Wimbish has made the second of these two showings.[3] That showing required her to "produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Eley*, 793 F.3d at 100 (internal quotation marks omitted). The evidence relevant to this inquiry includes "attorneys' fee matrices," like the USAO *Laffey* Matrix,

---

[3] Because Ms. Wimbish has made the showing that lends itself to scrutiny of an evidentiary record, the Court has no need to assess whether she has made the alternative showing, which would require the Court to go down the rabbit hole of trying to determine whether Ms. Wimbish has demonstrated that IDEA litigation is "complex federal litigation." *See Reed*, 843 F.3d at 528 (Tatel, J., concurring) (explaining that whether IDEA litigation is "complex" is "a legal question that cannot depend . . . on whether one lawyer has met her burden of proof"). Accordingly, the parties' arguments concerning whether IDEA litigation is "complex federal litigation" will go unaddressed.

supplemented by "surveys to update them; affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases; and evidence of recent fees awarded by the courts or through settlement to attorneys with comparable qualifications handling similar cases." *Id.* at 100-01 (internal quotation marks and alteration omitted).

Here, in addition to affidavits from her attorneys, Ms. Wimbish has submitted nine affidavits from IDEA practitioners in this jurisdiction that support a finding that full USAO *Laffey* rates are the prevailing rates in the community for IDEA litigation. *See* V.S. of Douglas Tyrka, ECF No. 17-11 ¶ 5 (stating that Tykra & Associates "has always exclusively charged rates matching those in the adjusted *Laffey* matrix" and, even though "Tyrka & Associates has historically primarily represented clients who cannot afford representation, the firm has had several clients who pay the firm [*Laffey*] rates directly"); V.S. of Diana M. Savit, ECF No. 17-12 ¶¶ 13-14 (explaining that her IDEA practice is restricted to paying clients and that she would not take a case unless she "reasonably expect[ed] to be awarded an hourly rate of at least $500, far above the '75% of USAO *Laffey*' rate"); Decl. of Emily B. Read, ECF No. 17-9 ¶ 6 ("In its decision on our fees motion, the Court in [*Blackman*] awarded me the full *Laffey* rate . . . .

All Bazelon Center attorneys billing time on the due process proceedings and the subsequent federal litigation received the full *Laffey* rate . . . ."); Decl. of Elizabeth T. Jester, ECF No. 17-13 ¶ 12 ("My rate of $520 per hour is equivalent to the rates set forth in the *Laffey* matrix for attorneys with 20+ years of experience."); V.S. of Maria G. Mendoza, ECF No. 17-14 ¶ 12 (explaining that it is "impossible" to maintain an IDEA practice when there is a risk that courts will award 75% of USAO *Laffey* rates); V.S. of Domiento C.R. Hill, ECF No. 17-15 ¶ 14 (asserting that "the '75% USAO' rate" is "unreasonably low and below market rates"); V.S. of Alana Hecht, ECF No. 17-16 ¶ 16 (explaining that a below-*Laffey* $270 per hour rate is insufficient to maintain an IDEA firm); Decl. of Pierre Bergeron, ECF No. 17-17 ¶ 13 ("I seek rates congruent with the rates prevailing in the community based on the USAO *Laffey* Matrix."); V.S. of Nicholas Ostrem, ECF No. 17-10 ¶ 4 ("The Ostrem Firm has always matched its hourly rates to those in what is commonly known as 'the adjusted *Laffey* matrix' . . . ."). A finding that full USAO *Laffey* rates are the prevailing rates in the community for IDEA litigation is bolstered by recent, post-*Eley* cases that Ms. Wimbish points to where courts in this District have awarded full USAO *Laffey* rates. *See, e.g.*, *Flood v. District of Columbia*, 172 F. Supp. 3d 197, 214 (D.D.C. 2016) (Howell, C.J.) ("[A] review of recent IDEA fee awards indicates

10

fairly broad support among Judges on this Court for reimbursement at or above full USAO *Laffey* rates."); *Merrick v. District of Columbia*, 134 F. Supp. 3d 328, 340 (D.D.C. 2015) (Berman Jackson, J.). These affidavits and these cases, taken together, sufficiently demonstrate that full USAO *Laffey* rates constitute the prevailing market rates for IDEA litigation in this jurisdiction.

Because Ms. Wimbish has carried her burden, the burden shifts to the District to "'provide specific contrary evidence tending to show that a lower rate would be appropriate.'" *Flood*, 172 F. Supp. 3d at 203 (quoting *Covington v. District of Columbia*, 57 F.3d 1101, 1109-10 (D.C. Cir. 1995)). The District has not carried that rebuttal burden. The District cites numerous pre-*Eley* cases where courts in this District applied 75% USAO *Laffey* rates, Def.'s Opp., ECF No. 18 at 7 n.3, 8 n.4 (collecting cases), and even cites some recent, post-*Eley* cases that have done the same. Def.'s Resp. to Pl.'s Suppl. Br. ("Def.'s Resp."), ECF No. 44 at 3-4 (citing *Taylor v. District of Columbia*, 205 F. Supp. 3d 75 (D.D.C. 2016) (Walton, J.); *Wilhite v. District of Columbia*, 196 F. Supp. 3d 1 (D.D.C. 2016) (Contreras, J.)). But as another court in this District has explained, "[a]t the end of the day, the Court is left with cases on both sides of the *Laffey* divide, but significantly more concrete evidence from Plaintiff in support of applying standard

11

*Laffey* rates." *Copeland v. District of Columbia*, 208 F. Supp. 3d 255, 258 (D.D.C. 2016) (Cooper, J.) (applying full USAO *Laffey* rates). That concrete evidence presented by Ms. Wimbish comes in the form of the recent cases *and* practitioner affidavits that, together, demonstrate that full USAO *Laffey* rates are prevailing rates in this jurisdiction for IDEA litigation. The District's citation to just cases fails to meet its rebuttal burden of putting on "*equally specific* countervailing evidence." *Covington*, 57 F.3d at 1109 (emphasis added).

The District attempts to preempt any consideration as to whether it has carried its rebuttal burden by essentially making two arguments as to why Ms. Wimbish has not carried her initial burden. The first is that Ms. Wimbish has not put on evidence that full USAO *Laffey* rates prevail in stay-put litigation specifically; instead, the affidavits and cases that she relies on concern IDEA litigation generally. *See* Def.'s Opp., ECF No. 18 at 5 (citing *Douglas v. District of Columbia*, 67 F. Supp. 3d 36 (D.D.C. 2014) (awarding 75% USAO *Laffey* rates to a party that obtained a stay-put order)); Def.'s Resp., ECF No. 44 at 3 (distinguishing Chief Judge Howell's recent decision in *Flood* to apply full *Laffey* rates on the basis that the proceedings in *Flood* "did not involve a 'stay-put' order"). But this attempt to carve out a sub-sub-market within the sub-market that is IDEA litigation ignores that the IDEA attorneys' fees inquiry focuses

12

on "IDEA cases *generally*, without regard to the unique features

of an underlying IDEA proceeding in a particular case." *Flood*,

172 F. Supp. 3d at 206; *see also Reed*, 843 F.3d at 526 (noting

that the D.C. Circuit has "yet to determine whether all aspects

of an IDEA litigation should be treated as a unified whole,

subject to the same prevailing market rate," but affirming a

District Court that took a uniform approach to discrete portions

of an IDEA litigation). Accordingly, that Ms. Wimbish relies on

affidavits and cases concerning IDEA litigation generally,

rather than stay-put litigation specifically, does not prevent

her from carrying her initial burden.

The District's second argument as to why Ms. Wimbish fails

to meet her initial burden focuses on the practitioner

affidavits that Ms. Wimbish has submitted. The District argues

that these affidavits do not specify how many of the affiants'

IDEA fee-paying clients "actually pay *Laffey* rates." Def.'s

Opp., ECF No. 18 at 9. The District emphasizes that other courts

in this District have taken issue with affidavits very similar

to the ones submitted in this case because they "only provide[ ]

evidence of the fees the practitioners routinely *sought* rather

than the precise fees they actually *received*." Def.'s Resp., ECF

No. 44 at 3 (citing *Taylor*, 205 F. Supp. 3d at 85-86); *see also*

*Wilhite*, 196 F. Supp. 3d at 7-9; *Platt v. District of Columbia*,

168 F. Supp. 3d 253, 266 (D.D.C. 2016) (Kollar-Kotelly, J.). The Court finds this argument unavailing.

Douglas Tyrka states in his submission that his firm "has had several clients who pay the firm [*Laffey*] rates directly." V.S. of Douglas Tyrka, ECF No. 17-11 ¶ 5. Although another court in this District has called this same statement "general" and "unsubstantiated," *Platt*, 168 F. Supp. 3d at 266, this Court, respectfully, is of the view that this statement avers "precise fees" that an attorney has "received from fee-paying clients" for IDEA litigation. *See Eley*, 793 F.3d at 101. Similarly, Diana M. Savit, in her submission, states that she *only* takes fee-paying clients and indicates that those clients pay "an hourly rate of at least $500, far above the '75% of USAO *Laffey*' rate." V.S. of Diana M. Savit, ECF No. 17-12 ¶¶ 13-14. And Emily B. Read, in her submission, states that in *Blackman* she and other attorneys were awarded full *Laffey* rates. Decl. of Emily B. Read, ECF No. 17-9 ¶ 6. Other courts in this District have afforded Ms. Read's statement limited weight in their analyses because they have reasoned that *Blackman* "was *not* a routine IDEA matter, but instead was a 'complex case' that required a number of 'skilled litigators' to 'research many novel questions of law under tight time constraints.'" *Platt*, 168 F. Supp. 3d at 266; *see also Taylor*, 205 F. Supp. 3d at 85-86; *Wilhite*, 196 F. Supp. 3d at 8. This Court, again, respectfully takes a different view:

The fees that Ms. Read was awarded in *Blackman* should not be discounted due to *Blackman*'s "complexity." As stated above, for purposes of the attorneys' fees analysis, IDEA cases should be assessed in a categorical fashion, without distinctions concerning the "unique features" of one case as compared to another. *Flood*, 172 F. Supp. 3d at 206. Thus, Ms. Read's averment concerning the full *Laffey* rates she was awarded in *Blackman* constitutes powerful evidence of "recent fees awarded" by a court in IDEA litigation. *See Eley*, 793 F.3d at 101. And, in any event, to the extent that distinctions should be drawn between IDEA cases based on their "complexity," this case is sufficiently similar to *Blackman* to find Ms. Read's declaration quite compelling. Like *Blackman*, the stay-put litigation here involved "skilled litigators," *see, e.g.*, Decl. of Carolyn Houck, ECF No. 17-5 ¶ 8 ("I have successfully represented hundreds of clients in more than 1600 due process hearings or settlement agreements to enforce their rights under the Individuals with Disabilities Education Improvement Act . . . ."), "tight time constraints," *see* Pl.'s Mot. for Prelim. Inj., ECF No. 3 (filed September 1, 2015); Minute Entry of October 9, 2015 (granting stay-put injunction following hearing and ordering supplemental briefing on the issue of whether the District is required to fund 50% or 100% of J.W.'s cost of attendance at Stuart Hall), and "novel questions of law." *See*

*Wimbish*, 153 F. Supp. 3d at 12-13 (holding that the District is required to fund 100% of J.W.'s cost of attendance at Stuart Hall during the pendency of all administrative and judicial proceedings in this case even though both parties were unable to identify "an analogous case in support of their position[s]").

In short, this Court finds that Ms. Wimbish has submitted more than enough evidence to carry her initial burden of demonstrating that full USAO *Laffey* rates prevail in this jurisdiction. And, for the reasons stated above, the District has failed to carry its burden in rebuttal. Accordingly, full USAO *Laffey* rates are warranted for Ms. Wimbish's attorneys' work on the stay-put litigation in this case.

## III. Conclusion

Full USAO *Laffey* rates are warranted for Ms. Wimbish's attorneys' work on the motion for a stay-put injunction in this matter. Accordingly, the Court awards attorneys' fees at an hourly rate of $568 for attorney Charles Moran, $504 for attorney Carolyn Houck, and $315 for attorney Stevie Nabors.[4]

Mr. Moran billed a total of 16.5 hours, but 10 of those hours were dedicated to preparing the instant motion for attorneys' fees. Statement of Account and Costs, ECF No. 19-2.

---

[4] The applicable USAO *Laffey* Matrix is the one that prescribes rates for June 1, 2015 to May 31, 2016. *See* USAO Attorney's Fees Matrix —— 2015-2016, ECF No. 19-1.

Because Ms. Wimbish indicates that she will file a supplemental motion for "fees-on-fees," Pl.'s Mem. Supp., ECF No. 17-1 at 11, reimbursement for the hours dedicated to preparation of the instant fee motion is better reserved for when the Court considers the supplemental motion. Accordingly, Mr. Moran's total fee for the stay-put litigation equals $3,692 [$568/hour * 6.5 hours].

Ms. Houck billed a total of 62.7 hours. Statement of Account and Costs, ECF No. 19-2. 2.1 of those hours were dedicated to the motion for attorneys' fees and, for the reason stated immediately above, will not be factored into the award at this juncture. Two other hours were dedicated to travel time which, as the parties agree, only warrants reimbursement at half of the applicable hourly rate. *See* Def.'s Opp., ECF No. 18 at 11; Statement of Account and Costs, ECF No. 19-2. Accordingly, Ms. Houck's total fee for the stay-put litigation equals $30,038.40 [($504/hour * 58.6 hours) + (252/hour * 2 hours)].

Mr. Nabors billed a total of 60.6 hours. Statement of Account and Costs, ECF No. 19-2. 8.2 of those hours were dedicated to the motion for attorneys' fees and, for the reason stated above, will not be factored into the award at this juncture. Accordingly, Mr. Nabors' total fee for the stay-put litigation equals $16,506 [$315/hour * 52.4 hours].

As a result, after $559.45 in uncontested litigation costs are included, Statement of Account and Costs, ECF No. 19-2, the District shall pay Ms. Wimbish $50,795.85 as a total award for the stay-put litigation in this matter.[5] An appropriate Order accompanies this Memorandum Opinion.

 **SO ORDERED.**

**Signed:**   **Emmet G. Sullivan**
     **United States District Judge**
     **May 3, 2017**

---

[5] The Court has no need to address Ms. Wimbish's argument that the Court should "apply 20 U.S.C. § 1415(i)(3)(G) and decline to reduce [Ms. Wimbish's] attorneys' fees." Pl.'s Suppl. Br., ECF No. 42 at 1. Section 1415(i)(3)(G) states that "[t]he provisions of [§ 1415(i)(3)(F)] shall not apply in any action or proceeding if the court finds that the State or local educational agency unreasonably protracted the final resolution of the action or proceeding or there was a violation of this section." Because the Court concludes that the provisions of § 1415(i)(3)(F) are not implicated, the Court has no need to prevent the application of those provisions by means of § 1415(i)(3)(G). In any event, Ms. Wimbish's argument——that the District has "unreasonably protracted" this litigation——is wholly without merit.