**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JORIE WIMBISH, *et al.*

           Plaintiffs,

v.

DISTRICT OF COLUMBIA,

           Defendant.

No. 15-cv-1429 (EGS)

## MEMORANDUM OPINION

## I.   Introduction

Plaintiff Jorie Wimbish ("Ms. Wimbish"), on behalf of her minor daughter J.W.,[1] brings this action against Defendant District of Columbia (the "District") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, seeking partial reversal of a Hearing Officer's decision (the "HOD"). Since 2014, J.W., a resident of the District, has been enrolled in Stuart Hall School ("Stuart Hall"), a private boarding school in Staunton, Virginia. She is eligible for special education services. It is uncontested that in August 2015, the District of Columbia Public Schools ("DCPS") unilaterally decided that she was ineligible for those services without proper notice to her parents, an evaluation, an

---

[1] The Court shall refer to the minor by her initials. *See* Fed. R. Civ. P. 5.2(a)(3); *see also* LCvR 5.4(f)(2).

individualized education program ("IEP"), and an appropriate
placement for the 2015-2016 school year. After an administrative
due process hearing in November 2015, an impartial Hearing
Officer determined that DCPS denied J.W. a free appropriate
public education ("FAPE") by terminating her special education
services without an evaluation, an IEP, and an appropriate
placement. The Hearing Officer also determined that
DCPS violated IDEA by failing to provide Ms. Wimbish with prior
written notice of its ineligibility determination.

In fashioning a remedy, the Hearing Officer issued an HOD
that imposed certain conditions. First, the HOD required
Ms. Wimbish to obtain written permission from Stuart Hall for
DCPS to conduct observations and interviews there, with
Ms. Wimbish to bear the costs associated with any legal action
to compel Stuart Hall to authorize the on-site observations and
interviews by DCPS. Second, the HOD restricted Ms. Wimbish's
future due process complaints in that she could not challenge
the adequacy of J.W.'s evaluation if DCPS determined that J.W.
was ineligible for special education. Despite finding that J.W.
was entitled to an evaluation before DCPS' decision that she was
no longer a child with a disability, the HOD declined to order
any further assessments of J.W. Ms. Wimbish challenges these
portions of the HOD.

Ms. Wimbish asks this Court to, among other things, order the District to: (1) conduct a full evaluation of J.W. in all areas of suspected disability, and if she disagrees with that evaluation, an independent educational evaluation ("IEE") at public expense in line with market rates; (2) convene a meeting of J.W.'s IEP team to review the evaluations, determine her eligibility, and develop an IEP for J.W. if she is eligible to receive an IEP; (3) maintain J.W.'s placement at Stuart Hall until an IEP is developed or she is determined to be ineligible for special education services; and (4) reverse certain portions of the HOD.

Pending before the Court are the parties' cross-motions for summary judgment. Upon careful consideration of the parties' submissions, the applicable law, and the entire record, the Court concludes that: (1) the Hearing Officer erred in ordering Ms. Wimbish to obtain written permission from Stuart Hall for DCPS to conduct on-site observations and interviews and requiring her to bear the costs associated with any legal action to compel those observations and interviews there; and (2) the Hearing Officer did not provide a reasoned explanation for restricting Ms. Wimbish's ability to challenge the adequacy of J.W.'s evaluation in future due process complaints. Because the Hearing Officer did not provide an adequate remedy for DCPS' failure to conduct an evaluation of J.W. before its

ineligibility determination, the Court directs the District to
conduct a full evaluation of J.W. Therefore, the Court **GRANTS**
Plaintiffs' motion for summary judgment and **DENIES** the
District's cross-motion for summary judgment.

## II. Background

The Court begins with the statutory and regulatory
framework under IDEA, and then turns to the facts and procedural
history in this matter.

### A. Statutory and Regulatory Framework

In 1975, Congress enacted IDEA "to ensure that all children
with disabilities have available to them a [FAPE] that
emphasizes special education and related services designed to
meet their unique needs and prepare them for further education,
employment, and independent living[.]" 20 U.S.C. §
1400(d)(1)(A). A FAPE must "sufficient[ly] . . . confer some
educational benefit upon the . . . child." *Bd. of Educ. of
Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 200
(1982). To that end, "IDEA requires state and local educational
agencies that seek federal funding to first adopt procedures for
securing appropriate services for students with disabilities."
*Davis v. District of Columbia*, 244 F. Supp. 3d 27, 31 (D.D.C.
2017).

As the District's sole local educational agency, DCPS must
identify children who may have disabilities and then evaluate

4

those impairments. *Id.* at 31-32 (citing 20 U.S.C. § 1401(3)(A); *id.* § 1414; 34 C.F.R. §§ 300.301-.311); *see also N.G. v. District of Columbia*, 556 F. Supp. 2d 11, 25 (D.D.C. 2008) ("DCPS has a duty to locate [potential candidates] and complete the evaluation process."). Importantly, DCPS' obligations under IDEA extend to residents of the District who attend out-of-District schools. *District of Columbia v. Abramson*, 493 F. Supp. 2d 80, 86 (D.D.C. 2007) ("Just because Connecticut may have child find responsibilities of its own and just because S.A. is currently enrolled in school in Connecticut does not relieve DCPS from having to fulfill its own responsibilities as the [local educational agency] of residence to evaluate the student and make FAPE available.").[2]

---

[2] A child with a disability who is found to be eligible for special education services is entitled to an IEP. *Davis*, 244 F. Supp. 3d at 32. IDEA sets forth the requirements for an IEP. 20 U.S.C. § 1414(d). Courts typically use the same abbreviation—IEP—for an "individualized education plan" and an "individualized education program." *See, e.g.*, *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 448, 450 (2d Cir. 2015); *Reid v. District of Columbia*, 401 F.3d 516, 519, 527 (D.C. Cir. 2005). "The IEP—a document that teachers reference in classroom instruction—'sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives.'" *Davis*, 244 F. Supp. 3d at 32 (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)); *see also* 20 U.S.C. § 1414(d)(1)(A). While the IEP may be modified with proper notice to the parents and a written explanation, the school district "must revise the [IEP] at least yearly in light of academic progress, changes in needs, and other recent educational or

"As not all disabilities are permanent or even manifest,
the school district generally *must* reevaluate a child's status
at least once every three years and at most annually." *Davis*,
244 F. Supp. 3d at 32 (emphasis added) (citing 20 U.S.C. §
1414(a)(2)(B)). Under certain circumstances, parents have the
right to an IEE at public expense. 34 C.F.R. § 300.502(b). If a
parent requests an IEE at public expense, the public agency must
"without unnecessary delay" either initiate a hearing to show
that its evaluation is appropriate or ensure that an IEE is
provided at public expense. *Id.* § 300.502(b)(2).

A school district must not decide that the child is
ineligible for special education services without conducting a
reevaluation. *E.g.*, 20 U.S.C. § 1414(c)(5). IDEA expressly
provides that "a local educational agency *shall* evaluate a child
with a disability in accordance with this section before
determining that the child is no longer a child with a
disability." *Id.* § 1414(c)(5) (emphasis added); *see also* 34
C.F.R. § 300.305(e)(1) ("[A] public agency must evaluate a child
with a disability in accordance with §§ 300.304 through 300.311
before determining that the child is no longer a child with a
disability.").

Parents may seek administrative and judicial relief if they

---

medical information." *Davis*, 244 F. Supp. 3d at 32 (emphasis in
original) (citing 20 U.S.C. § 1414(d)(4)(A)).

object to the "identification, evaluation, or educational placement" of the student, or the provision of a FAPE. *See* 20 U.S.C. § 1415(b)(6)(A); *see also id.* § 1415(f)(1). A parent may first request an impartial administrative due process hearing. This process involves the parent filing an administrative due process complaint, and then an impartial Hearing Officer determining during the hearing whether the student received a FAPE. *See id.* § 1415(f)(3)(E)(i). After the hearing, "any party aggrieved by the findings and decision . . . shall have the right to bring a civil action with respect to the complaint presented" to the Hearing Officer "in a [federal] district court . . . ." *Id.* § 1415(i)(2)(A).

### B. Factual Background

The material facts in this case are undisputed. *See* Pls.' Statement of Material Facts Not in Dispute ("SOMF"), ECF No. 43-3 at 1–2.[3] The Court assumes the parties' familiarity with the factual background and procedural history, which are set forth in greater detail in the Court's two prior opinions. *See Wimbish v. District of Columbia* ("*Wimbish I*"), 153 F. Supp. 3d 4 (D.D.C. 2015); *see also Wimbish v. District of Columbia* ("*Wimbish II*"), 251 F. Supp. 3d 187 (D.D.C. 2017).

---

[3] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

J.W. and Ms. Wimbish are residents of the District. Pls.'
SOMF, ECF No. 43-3 at 1 ¶ 2. In 2007, J.W. was diagnosed with,
among other things, Attention Deficit Hyperactivity Disorder
("ADHD"). Neuropsychological Evaluation Report, ECF No. 35-4 at
38-39.[4] As a student with a disability, she was deemed eligible
for special education services pursuant to IDEA under the "Other
Health Impairment" classification. Admin. Due Process Compl.
Notice, ECF No. 35-9 at 36 ¶ 2; *see also* IEP, ECF No. 35-4 at
10. From 2008 to 2014, DCPS funded her placement at a full-time
special education day school. *Wimbish I*, 153 F. Supp. 3d at 7.
Because that school was too restrictive a placement for her,
Ms. Wimbish and DCPS agreed that J.W. should be transferred to a
less-restrictive environment. *Id.*

For the 2014-2015 school year, DCPS was required to develop
an updated IEP for J.W. and propose an appropriate school
placement for her. *Id.* The parties met to develop an IEP in June
2014, but they did not agree as to the finality of the IEP
developed at that meeting. *Id.* With the encouragement of DCPS
officials, Ms. Wimbish enrolled J.W. in Stuart Hall—a school
that provided services for her disability—before the beginning
of the 2014-2015 school year. *Id.* A neuropsychological

---

[4] The Administrative Record ("AR") is filed on the Court's
electronic docket in two parts at ECF No. 35 through ECF No. 36-
10.

evaluation was conducted on October 16, 2014, and it confirmed J.W.'s disability. Neuropsychological Evaluation Report, ECF No. 35-4 at 37-50.

After filing an administrative due process complaint in January 2015 with the Office of Dispute Resolution alleging DCPS had failed to develop an IEP for J.W. for the 2014-2015 school year and had failed to propose an appropriate placement, a Hearing Officer issued a March 2015 decision in Ms. Wimbish's favor—a decision that neither party appealed. *Wimbish I*, 153 F. Supp. 3d at 8.

In August 2015, DCPS and Ms. Wimbish met, and the meeting was scheduled to prepare an IEP for the 2015-2016 school year. *Id.* Instead of developing an updated IEP, however, DCPS informed Ms. Wimbish that J.W. was no longer eligible for special education services and the DCPS representatives aimed instead to develop a plan for accommodations under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq*. *Id.* at 8-9. In turn, Ms. Wimbish requested an adjournment of the meeting, but DCPS pressed forward with the meeting in the absence of Ms. Wimbish and her counsel. *Id.* at 9. Thereafter, DCPS developed a Section 504 plan for J.W. without Ms. Wimbish's participation. *Id*. DCPS issued a Final Eligibility Determination Report, which found that J.W. was ineligible for special education services. HOD, ECF No. 35-2 at 24 ¶ 91. This decision

was based on the October 2014 neuropsychological evaluation.
HOD, ECF No. 35-2 at 22 ¶¶ 80-81, 28 ¶ 119.

### 1. **August 2015 Due Process Complaint**

In August 2015, Ms. Wimbish challenged the unilateral
decision of DCPS to discontinue J.W.'s special education
services by filing an administrative due process complaint. *Id.*
In it, she alleged that DCPS:

> (1) failed to evaluate the student prior to
> exiting her from special education; (2) failed
> to provide a prior written notice before
> changing the student's eligibility; (3) failed
> to have an IEP in place prior to the beginning
> of the school year; (4) failed to provide an
> appropriate placement prior to the beginning
> of the 2015-16 school year, including failure
> to involve Ms. Wimbish in the placement
> decision; and (5) retaliated against
> Ms. Wimbish for exercising her rights to
> litigate claims through a due process hearing
> and for contacting the [District's] City
> Council complaining of DCPS' "fraud, waste,
> and abuse."

Pls.' Mem. of Points & Authorities in Support of Pls.' Mot. for
Summ. J. ("Pls.' Mem."), ECF No. 43-1 at 3. Ms. Wimbish
requested, *inter alia*, that DCPS fund IEEs to include:
"(i) ADHD; (ii) anxiety disorder, (iii) language processing; and
(iv) an assessment to collect classroom observations, teacher
interviews and/or behavior ratings, staff interviews and/or
behavior ratings, interventions provided in the current school
setting, . . . [J.W.'s] responses to interventions, and school
data and teacher input regarding the impact of . . . [J.W.'s]

ADHD on her academic performance[.]" HOD, ECF No. 35-2 at 8.

## 2. November 2015 Hearing Officer's Decision

Following a two-day due process hearing, the Hearing
Officer issued a fifty-page HOD on November 16, 2015 and a
corrected one on November 19, 2015. *See, e.g.*, *Wimbish I*, 153 F.
Supp. 3d at 9 n.4; Pls.' SOMF, ECF No. 43-3 at 1-2 ¶¶ 5-11; AR,
EFC No. 35-1 at 3. In the HOD, the Hearing Officer made four
primary findings:

> 1) On or about August 18, 2015, [DCPS] denied
>    [J.W.] a FAPE by exiting [J.W.] from special
>    education without evaluating her in all
>    areas of suspected disability.
>
> 2) [DCPS] violated IDEA by failing to provide
>    sufficient advance notice to [Ms. Wimbish]
>    that [J.W.'s] eligibility would be
>    discussed and determined at the August 18,
>    2015 meeting; however, the [prior written
>    notice] issued after the meeting was
>    sufficient to inform [Ms. Wimbish] of the
>    decision made at that meeting.
>
> 3) [DCPS] denied [J.W.] a FAPE by failing to
>    have an IEP in place for [J.W.] prior to
>    the beginning of SY 2015-16.
>
> 4) [DCPS] denied [J.W.] a FAPE by failing to
>    provide an appropriate placement for her
>    prior to the SY 2015-16."

HOD, ECF No. 35-2 at 42. The Hearing Officer also issued an
order and explained that "the specificity of [the] Order [was]
required due to the apparent inability of the parties and their
counsel to work cooperatively, even to schedule meetings." HOD,

ECF No. 35-2 at 43 n.15.[5] As such, the order imposed certain conditions on the parties. *Id.* at 43-50, ¶¶ 1-33.

Two of those conditions are relevant here. *See id.* at 44-45, ¶¶ 8-15, 21. First, the Hearing Officer required Ms. Wimbish to "obtain written authorization from a non-public, parochial, out-of-state boarding school to allow DCPS to observe their school or, if the school resists, to shoulder the financial burden of forcing the school to allow the DCPS observation through legal action." Pls.' Mem., ECF No. 43-1 at 4; *see also* Pls.' SOMF, ECF No. 43-3 at 2 ¶ 12 ("If Ms. Wimbish is unable to secure either of these options, the [HOD] allows the District to reinstate its finding that J.W. is ineligible."). Second, the Hearing Officer stated that, if DCPS determined at an

---

[5] The Hearing Officer found that "[Ms. Wimbish] was not a reliable witness" at the due process hearing, HOD, ECF No. 35-2 at 9; thus, he "assigned little weight to her testimony when it conflicted with other evidence[,]" *id.* at 10. The District argues that "the Court should therefore defer to the hearing officer's findings of witness credibility in evaluating [Ms. Wimbish's] appeal of the HOD." Def.'s Mot., ECF No. 46 at 7. It is undisputed that a "hearing officer [is] entitled to make reasonable credibility determinations and, in the absence of extrinsic evidence to the contrary, those determinations are entitled to deference from [the] Court." *McAllister v. District of Columbia*, 45 F. Supp. 3d 72, 77 (D.D.C. 2014). In reviewing an HOD in an IDEA case, the Court need not disturb the Hearing Officer's credibility findings to reverse an HOD that fails to comport with IDEA. *See N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 73, 73 n.6 (D.D.C. 2010) (reversing an HOD and "[i]n so ruling, the Court [did] not disturb the Hearing Officer's findings regarding the credibility of the witnesses who gave testimony at the due process hearing.").

eligibility meeting that J.W. was ineligible for special
education services after the observations, interviews, and other
data collection at the private boarding school, "[n]othing in
this Order precludes [Ms. Wimbish] from filing a new Due Process
Complaint over such a finding of non-eligibility." HOD, ECF No.
35-2 at 47 ¶ 21. "However, [Ms. Wimbish] may *not* challenge the
adequacy of . . . [J.W.'s] evaluation on the ground that
additional assessments should have been conducted." *Id.*
(emphasis added).

Finally, the Hearing Officer found that when DCPS
unilaterally decided to terminate J.W.'s special education
services in August 2015, DCPS "unreasonably relied upon the
October 16, 2014 neuropsychological evaluation as the primary
source of information about . . . [J.W.'s] disability and the
educational impact of her disability." *Id.* at 28 ¶ 119. The
Hearing Officer also found that Ms. Wimbish had "not met her
burden of proof regarding the need for any other assessments
(*e.g.*, ADHD, anxiety disorder, language processing, or updated
academic achievement)." *Id.* at 27 ¶ 90. He did not order a *new*
evaluation of J.W. *See generally* HOD, ECF No. 35-2. He required
"observations, interviews, and other data collection" at Stuart
Hall. *Id.* at 45 ¶ 11.

### C. Procedural History

On December 16, 2015, Ms. Wimbish filed a partial appeal of

the HOD in this Court. *Wimbish II*, 251 F. Supp. 3d at 190; *see generally* docket for Civil Action No. 15-2182. Ms. Wimbish alleges, *inter alia*, that: (1) the Hearing Officer erred as a matter of law by denying further assessment of J.W. ("Count I"); (2) the Hearing Officer erred in requiring Ms. Wimbish to bear the financial burden of compelling a non-public, out-of-state, parochial boarding school to allow DCPS to inspect and observe its campus ("Count III"); and (3) the Hearing Officer erred in limiting Ms. Wimbish's ability to contest DCPS' future actions in a due process hearing ("Count IV"). Compl., Civil Action No. 15-2182, ECF No. 1 at 9-11, 13-16 ¶¶ 69-80, 90-105.[6]

---

[6] Plaintiffs assert four other claims against the District: (1) the Hearing Officer erred in limiting the reimbursement amount for J.W.'s attendance at Stuart Hall ("Count II"); (2) the District violated Ms. Wimbish's right to due process by selecting a hearing officer who had not been reviewed by the community review panel under D.C. Code § 38-2572.02 ("Count V"); (3) Ms. Wimbish is entitled to attorney's fees and costs associated with the claims brought by her in the November 2015 hearing ("Count VI"); and (4) she is eligible for an award of expert costs pursuant to D.C. Mun. Regs. tit. 5-E, § 3023.3 ("Count VII"). Compl., Civil Action No. 15-2182, ECF No. 1 at 12-13, 16-19 ¶¶ 81-89, 106-131. Plaintiffs request that this Court dismiss Count II because "the District has complied with the stay put order and is directly funding J.W.'s placement at Stuart Hall." Pls.' Mem., ECF No. 43-1 at 10; *see also Wimbish I*, 153 F. Supp. 3d at 13 (ordering the District to "fund 100% of Plaintiffs' cost of attendance at Stuart Hall until the conclusion of these proceedings, unless the parties otherwise agree."). Plaintiffs also request that the Court dismiss Count V because "[o]n September 1, 2016, the Office of Dispute Resolution articulated its intent to create a Community Review Panel to select hearing officers as required by the D.C. Code." Pls.' Mem., ECF No. 43-1 at 10. Accordingly, the Court dismisses without prejudice Counts II and V as moot. *See Adagio Inv.*

14

On December 22, 2015, the Court consolidated the instant partial appeal of the HOD under Civil Action No. 15-1429. *E.g.*, *Wimbish I*, 153 F. Supp. 3d at 9 n.4; Minute Order, Civil Action No. 15-2182 (Dec. 22, 2015). Since the Court's two prior decisions did not reach the merits of Ms. Wimbish's partial appeal, *e.g.*, *Wimbish I*, 153 F. Supp. 3d at 9 n.4; *Wimbish II*, 251 F. Supp. 3d at 190, the parties filed cross-motions for summary judgment. *See, e.g.*, Pls.' Mot. for Summ. J., ECF No. 43; Pls.' Mem., ECF No. 43-1; Def.'s Opp'n & Cross-Mot. for Summ. J. ("Def.'s Mot."), ECF No. 46. Those motions are ripe and ready for the Court's adjudication.

## III. Standard of Review

### A. Cross-Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In ruling on cross-motions for summary judgment, the Court shall grant summary judgment only if one of the moving parties is

_____

*Holding Ltd. v. Fed. Deposit Ins. Corp.*, 338 F. Supp. 2d 71, 75 n.7 (D.D.C. 2004) (dismissing claims based on plaintiffs' representation that they were moot). At Plaintiffs' request, the Court will stay Counts VI and VII until thirty (30) days after the Court issues this Memorandum Opinion.

entitled to judgment as a matter of law upon material facts that are not genuinely disputed. *See Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 658 F. Supp. 2d 217, 224 (D.D.C. 2009).

### B. IDEA

"The Court's approach toward IDEA administrative decisions diverges somewhat from its role in the typical lawsuit." *Davis*, 244 F. Supp. 3d at 37. "Although the [cross-motions] bear the familiar placard of 'summary judgment,' judicial review of [HODs] does not follow 'a true summary judgment procedure.'" *Id.* (quoting *L.R.L. ex rel. Lomax v. District of Columbia*, 896 F. Supp. 2d 69, 73 (D.D.C. 2012) (citation omitted)). Under IDEA, the reviewing court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." *D.R. ex rel. Robinson v. District of Columbia*, 637 F. Supp. 2d 11, 15–16 (D.C. Cir. 2009) (quoting 20 U.S.C. § 1415(i)(2)(C)).

In an IDEA case, the HOD is afforded "less deference than is conventional in administrative proceedings." *Reid*, 401 F.3d at 521 (citation and internal quotation marks omitted). While a court must "engage in a more rigorous review of the decision below than is typical in administrative cases," it should

16

"nevertheless accord the [HOD] due weight[,]" and "should not substitute its own view of sound educational policy for that of the hearing officer." *G.G. ex rel. Gersten v. District of Columbia*, 924 F.Supp.2d 273, 278 (D.D.C.2013) (internal quotation marks omitted). Nonetheless, "a [HOD] without reasoned and specific findings deserves little deference." *Reid*, 401 F.3d at 521 (citation and internal quotation marks omitted); *B.D. v. District of Columbia*, 817 F. 3d 792, 797 (D.C. Cir. 2016) (same). The burden of proof is with the party challenging the administrative determination, who must "at least take on the burden of persuading the [C]ourt that the Hearing Officer was wrong." *Reid*, 401 F.3d at 521 (citation omitted).

Finally, "when a school district denies a child a FAPE, the courts have 'broad discretion' to fashion an appropriate remedy." *Boose v. District of Columbia*, 786 F.3d 1054, 1056 (D.C. Cir. 2015) (quoting *Florence Cty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15–16 (1993)). Appropriate relief may entail an order compelling a school district to conduct and fund an evaluation of a child with a disability. *See, e.g.*, *Davis*, 244 F. Supp. 3d at 52; *Hill v. District of Columbia*, No. 14-CV-1893 (GMH), 2016 WL 4506972, at *26 (D.D.C. Aug. 26, 2016).

## IV. Analysis

Ms. Wimbish seeks the partial reversal of the HOD on three grounds: (1) the Hearing Officer erred in "conditioning J.W.'s

right to a FAPE on Ms. Wimbish['s] ability to fund a type of legal proceeding that does not exist and [that she] could not afford even if it did[;]" (2) the Hearing Officer "violated [her] right to bring a due process complaint by improperly limiting the subject matter of any future due process complaints[;]" and (3) the Hearing Officer "refused" to order the District to comply with IDEA and "fully evaluate J.W." Pls.' Mem., ECF No. 43-1 at 1. The Court addresses each argument in turn, concluding that Ms. Wimbish has demonstrated by a preponderance of the evidence that the Hearing Officer erred in: (1) requiring her to compel Stuart Hall to allow DCPS to conduct observations and interviews at Stuart Hall; and (2) restricting her ability to bring an administrative due process challenge for future actions by DCPS. The Court also concludes that the Hearing Officer erred as a matter of law by denying a full evaluation of J.W. before DCPS decided that she was no longer eligible for special education services. Ms. Wimbish is therefore entitled to summary judgment.

### A. The Hearing Officer Erred in Requiring Ms. Wimbish to Compel Stuart Hall to Allow DCPS to Conduct Observations and Interviews at Stuart Hall

Ms. Wimbish asks this Court to reverse and strike the portion of the HOD that ordered her to "secure access for DCPS employees to observe Stuart Hall's campus" because it conditions "J.W.'s receipt of a FAPE on Ms. Wimbish's ability to pay for

legal action against Stuart Hall" and she "cannot comply with
[that] order as a matter of legal impossibility because no cause
of action exists to implement the order." Pls.' Mem., ECF No.
43-1 at 7. Ms. Wimbish states that she attempted to comply with
that portion of the HOD, but Stuart Hall rejected her request.
*See* Pls.' Reply & Opp'n ("Pls.' Reply"), ECF No. 47 at 2; *see
also* Letter from Douglas Burtch, Counsel for Stuart Hall, to
Tanya Chor, Counsel for DCPS, & Stevie Nabors, Counsel for
Ms. Wimbish (Sept. 14, 2015), ECF No. 47-1 at 4 ("Stuart Hall is
not open to this proposed on-site visit and observation.").
[hereinafter "Stuart Hall Ltr."]. According to Ms. Wimbish,
"[n]either the District nor [her counsel] have been able to
identify any legal proceedings which could produce such an
order." Pls.' Reply, ECF No. 47 at 1; *see also* Declaration of
Stevie Nabors, ECF No. 47-2 at 1-2 (explaining his extensive
legal research and efforts to possibly bring an action under
federal, D.C., or Virginia law to satisfy the HOD's conditions)
[hereinafter "Nabors Decl."].

The District responds that the Hearing Officer "correctly"
and "appropriately ordered Ms. Wimbish to facilitate the
District's entrance into the school" for the "purposes of
evaluation, observation, and inspection." Def.'s Mot., ECF No.
46 at 9-10. The District argues that this condition was
appropriate, in part, because "Ms. Wimbish unilaterally chose

for J.W. to attend [Stuart Hall]." *Id.* at 9. The District
contends that Ms. Wimbish has not taken any action to obtain a
court order to allow the observations at Stuart Hall, and she
has "failed to account for what, if any, costs would be
associated with obtaining said court order." *Id.*; *see also*
Def.'s Reply, ECF No. 50 at 2.

The Court is not persuaded by the District's arguments.
First, as Ms. Wimbish points out, the Hearing Officer improperly
allows the District to determine that J.W. is ineligible for
special education services if Ms. Wimbish fails to obtain a
court order, at her own expense, to compel Stuart Hall to permit
on-site observations and interviews there. *See* Pls.' Mem., ECF
No. 43-1 at 8; *see also* HOD, ECF No. 35-2 at 45 ("If [Stuart
Hall] fails or refuses to provide permission . . ., [DCPS] may
reinstate the finding of the Student's ineligibility for special
education and related services . . . ."). Neither IDEA nor its
implementing regulations contemplate conditioning eligibility
for special education services on such a requirement.

IDEA provides that DCPS must evaluate J.W. before
determining that she is no longer a child with a disability.
*See, e.g.*, 20 U.S.C. § 1414(c)(5); 34 C.F.R. § 300.305(e)(1). It
also requires that J.W.'s special education services be
"provided at *public expense*, under public supervision and
direction, and without charge." 20 U.S.C. § 1401(9) (emphasis

added).[7] Neither the Hearing Officer nor the District has cited any authority to support the conditions placed on Ms. Wimbish requiring her to bear the financial costs of compelling Stuart Hall to permit the observations and interviews. *See generally* HOD, ECF No. 35-2; Def.'s Mot., ECF No. 46; Def.'s Reply, ECF No. 50. Therefore, the Hearing Officer placed an improper burden on Ms. Wimbish, requiring her to take actions not required by IDEA for J.W. to receive special education services at public expense. *Cf. Horne v. Potomac Preparatory P.C.S*, 209 F. Supp. 3d 146, 155 (D.D.C. 2016) (finding that a hearing officer improperly placed the burden on the parent to renew her initial request for an IEE, which was not required by IDEA).

The District's arguments—that Ms. Wimbish has failed to act to secure a court order and she has failed to provide the costs for such an order—are unavailing. *See* Def.'s Mot., ECF No. 46 at 9-10; *see also* Def.'s Reply, ECF No. 50 at 2. Ms. Wimbish's counsel submitted a declaration in which he states that

---

[7] The parties disagree as to whether two decisions, *Wimbish I*, 153 F. Supp. 3d at 13 and *Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S.*, 96 F.3d 78, 86 (3d Cir. 1996), stand for the proposition that the Hearing Officer erroneously conditioned J.W.'s receipt of a FAPE based on Ms. Wimbish's ability to bear the litigation costs against Stuart Hall. *Compare* Pls.' Mem., ECF No. 43-1 at 8, *with* Def.'s Mot., ECF No. 46 at 10. Neither party denies that both decisions deal with IDEA's "stay-put" provision. *See* 20 U.S.C. § 1415(j). The Court therefore rejects Plaintiffs' attempt to analogize the issues raised in the instant partial appeal of the HOD to the issues presented in the two stay-put opinions dealing with a different IDEA provision.

Ms. Wimbish has "incurred $8,292 in attorneys' fees for legal research related to identifying a cause of action or proceeding that could implement the HOD." Nabors Decl., ECF No. 47-2 at 2. The District does not challenge the declaration or the statements contained therein. *See generally* Def.'s Reply, ECF No. 50 at 1-4.

Further, her counsel's legal research concluded that she "cannot use the IDEA to secure an observation because Stuart Hall does not accept federal funds" and "the Code of the Commonwealth of Virginia provides no cause of action to compel Stuart Hall to allow DCPS to observe its campus." Pls.' Mem., ECF No. 43-1 at 9 (citing Va. Code Ann. § 22.1); *see also* Pls.' SOMF, ECF No. 43-3 at 1 ¶ 5 ("Stuart Hall does not receive federal funds, therefore it is not subject to the IDEA or [the Family Educational Rights and Privacy Act of 1974]."). The District does not dispute Ms. Wimbish's counsel's research indicating that Virginia law does not provide a cause of action to compel Stuart Hall to permit DCPS to observe on its campus and that IDEA does not offer a legal mechanism to do so. *See generally* Def.'s Mot., ECF No. 46; Def.'s Reply, ECF No. 50. By not responding to her argument that she cannot rely on IDEA for DCPS to gain access to Stuart Hall's property, the District has conceded it. *See Campbell v. Nat'l R.R. Passenger Corp.*, 311 F. Supp. 3d 281, 327 n.13 (D.D.C. 2018). Indeed, Stuart Hall "is

exercising the traditionally private function of regulating access to private property." *Tynecki v. Tufts Univ. Sch. of Dental Med.*, 875 F. Supp. 26, 33 (D. Mass. 1994).

As to the "legal impossibility" argument, the District attacks it by contending that Ms. Wimbish failed to provide a "sufficient legal basis" in relying on Virginia's education statute, Va. Code Ann. § 22.1-1, *et seq.* Def.'s Mot., ECF No. 46 at 10.[8] The District's argument misses the point. Given that Stuart Hall has refused to permit DCPS onto its campus and the parties have not identified any legal proceedings to force a private school to give the parties access to its property, it is a legal impossibility for Ms. Wimbish to obtain Stuart Hall's permission to allow DCPS to enter Stuart Hall for the observations and interviews. *Cf. White v. Fraternal Order of Police*, 707 F. Supp. 579, 593 (D.D.C. 1989) ("Where, as here, all the facts in the letters are concededly true, it is a legal impossibility for plaintiff to prove that the statements were

---

[8] The District further contends that the "record evidence clearly shows that Stuart Hall" will not allow DCPS "to gain entry to its campus without a valid subpoena." Def.'s Reply, ECF No, 50 at 1. This contention is unsupported by the record. *See generally* AR, ECF Nos. 35 & 36. Stuart Hall's counsel states that the school "will produce documents and information concerning [J.W.] to DCPS when served with a valid, appropriate subpoena that would be binding on the school." Stuart Hall Ltr., ECF No. 47-1 at 3. Nowhere in the letter does it state that Stuart Hall will allow DCPS to gain access to the school's property with a subpoena. *See id.*

published with knowledge that they were false or with reckless disregard of whether they were false or not."), *aff'd*, 909 F.2d 512 (D.C. Cir. 1990).

The District's other argument is equally unavailing. The District suggests that Ms. Wimbish's decision to enroll J.W. in Stuart Hall and her "inaction" to "facilitate DCPS's entrance into Stuart Hall" created a "true 'impossible' situation." Def.'s Mot, ECF No. 46 at 10; Def.'s Reply, ECF No. 50 at 1-2. It is disingenuous to blame Ms. Wimbish for the difficult decision to place her child with a disability hours away from her home to ensure that she could have "smaller class size[s] with more individualized attention" and a "solid foundation of academic skills[.]" Neuropsychological Evaluation Report, ECF No. 35-4 at 37. The District ignores the difficult choice that Ms. Wimbish faced when DCPS did not fulfil its obligations under IDEA. *See* HOD, ECF No. 35-2 at 42. Because IDEA neither requires her to gain access for DCPS to observe on Stuart Hall's campus nor pay for legal action against Stuart Hall, Ms. Wimbish has demonstrated that the Hearing Officer erred in ordering her to do so. Accordingly, the Court reverses and strikes the portions of the HOD regarding Ms. Wimbish's obligation to secure permission for DCPS to observe at Stuart Hall, and to secure an order requiring Stuart Hall to allow DCPS to observe there. *See L.O. ex rel. D.O. v. E. Allen Cty. Sch. Corp.*, 58 F. Supp. 3d

882, 894-95, 899 (N.D. Ind. 2014) (granting a party's request to strike a hearing officer's orders).

### B. The Hearing Officer Erred in Restricting Ms. Wimbish's Ability to Bring an Administrative Due Process Challenge for Future Actions by DCPS

The Court next considers whether the Hearing Officer unlawfully restricted Ms. Wimbish's right to administratively challenge the adequacy of J.W.'s future evaluation on the ground that additional assessments should have been conducted. HOD, ECF No. 35-2 at 47; *see also* Pls.' SOMF, ECF No. 43-3 at 1 ¶ 5. According to Ms. Wimbish, reversal of the portion of the HOD that limited her right to bring an administrative due process complaint is warranted and the Court should find that she has a "right to challenge the District's subsequent evaluation of or failure to evaluate J.W. prior to terminating her services." Pls.' Mem., ECF No 43-1 at 7. She argues that this portion of the HOD violates the IDEA provision that gives her the right to bring a due process complaint as to an evaluation of J.W. *Id.* (citing 20 U.S.C. § 1415(b)(6)(A)). Finally, Ms. Wimbish contends that the Hearing Officer failed to "provide any explanation for this restriction on [her] ability to bring future claims through a due process complaint." *Id.* at 7.

The District maintains that the "[H]earing [O]fficer did not err in precluding Plaintiffs from challenging the adequacy

of J.W.'s evaluation"[9] because he determined that she did not

prove the need for any other assessments. *Id.* at 8-9. The

District argues that the Hearing Officer "clarified" that

Ms. Wimbish was not precluded from filing a new due process

complaint with respect to an ineligibility finding. Def.'s Mot.,

ECF No. 46 at 9.

IDEA requires "an opportunity for any party to present a

complaint . . . with respect to *any matter* relating to the

identification, *evaluation*, or educational placement of the

child, or the provision of a [FAPE]." 20 U.S.C. § 1415(b)(6)(A)

(emphasis added). Neither party disputes that Ms. Wimbish has

this right. *See* Pls.' Reply, ECF No. 47 at 6; *see generally*

Def.'s Reply, ECF No. 50. In fact, the District did not

---

[9] The District contends that "in the Due Process Complaint at issue, Plaintiffs already challenged this point[.]" Def.'s Mot., ECF No. 46 at 8. Ms. Wimbish argues that the District's implicit argument—that her due process challenge is barred by issue preclusion—should be rejected because the HOD "is so broadly written that it would bar [her] from bringing a due process complaint even in the event of future violations of the IDEA's evaluation requirements." Pls.' Reply, ECF No. 47 at 7. She points out that IDEA mandates that "a student receive a full evaluation every three years," 34 C.F.R. § 300.303(b)(2), and "substantial changes" have occurred in J.W.'s life since her last evaluation on October 16, 2014; thus, "issue preclusion cannot apply in this case." *Id.* (citing *Whole Women's Health v. Hellerstedt*, 136 S. Ct. 2292, 2305-07 (2016) (holding that res judicata does not bar claims in a case involving "important human values" and "even a slight change of circumstances"). In its reply brief, the District does not address this argument, *see generally* Def.'s Reply, ECF No. 50; therefore, the District has conceded the argument by not responding to it. *See Campbell*, 311 F. Supp. 3d at 327 n.13.

challenge Ms. Wimbish's argument as to her right under 20 U.S.C. § 1415(b)(6)(A) in its reply brief. *See generally* Def.'s Reply, ECF No. 50.

The Court agrees with Ms. Wimbish that the Hearing Officer failed to explain why he expressly prohibited her challenge to the adequacy of J.W.'s evaluation "on the ground that additional assessments should have been conducted." HOD, ECF No. 35-2 at 47 ¶ 21. This portion of the HOD appears to be predicated on the finding that she failed to meet her burden of proof as to the need for any other assessments. *See id.* at 24 ¶ 90. But the Hearing Officer found that DCPS' ineligibility determination was "significantly impeded" by a "lack of information" about J.W.'s specific supports at Stuart Hall. *Id.* The Hearing Officer also found that Ms. Wimbish and her counsel did not have an opportunity to participate in the ineligibility determination because DCPS failed to provide them with adequate notice. *Id.* at 26 ¶ 89. Given that DCPS did not conduct an evaluation before it determined that J.W. was ineligible for special education services and that it "unreasonably relied upon the October 16, 2014 neuropsychological evaluation as the primary source of information" for its unilateral decision, *id.* at 28 ¶ 119, the Hearing Officer did not provide a reasoned explanation for the part of the order that limits Ms. Wimbish's ability to challenge its failure to assess and/or evaluate J.W. *See Reid*, 401 F.3d at

521 ("[A] [HOD] without reasoned and specific findings deserves little deference." (citation and internal quotation marks omitted)). "Consequently, the Hearing Officer's ruling merits little deference." *Shaw v. District of Columbia*, No. 17-00738 (DLF/RMM), 2019 WL 498731, at *8 (D.D.C. Feb. 8, 2019) (citing *Reid*, 401 F.3d at 521), *adopted by*, 2019 WL 935418 (D.D.C. Feb. 26, 2019). The Court therefore finds that the Hearing Officer erred in restricting Ms. Wimbish's ability to assert a new due process complaint. Accordingly, the Court reverses the portions of the HOD that limit Ms. Wimbish's right to bring an administrative due process complaint on any matter under IDEA.

### C. The Hearing Officer Erred as a Matter of Law by Denying a Comprehensive Evaluation of J.W. Before DCPS Decided That She Was No Longer Eligible for Special Education Services

Finally, the Court considers whether the Hearing Officer erred as a matter of law in failing to order DCPS to fully evaluate J.W. While Ms. Wimbish argues that the HOD refused to order DCPS to fully evaluate J.W., *see* Pls.' Mem., ECF No. 43-1 at 5, the District contends that the Hearing Officer ordered psychological evaluations of J.W., *see* Def.'s Mot., ECF No. 46 at 7-9. The Court cannot agree with the District because the record does not support the District's contention.

As an initial matter, IDEA could not be any clearer: DCPS "*shall* evaluate a child with a disability in accordance with

this section before determining that the child is no longer a child with a disability." 20 U.S.C. § 1414(c)(5) (emphasis added); *see also V.S. ex rel. A.O. v. Los Gatos-Saratoga Joint Union High Sch. Dist.*, 484 F.3d 1230, 1234 (9th Cir. 2007) (holding that because the student was "officially classified as a 'child with a disability' . . ., the school at that point, and prospectively, had only two choices: 1) provide [the child] services in accordance with the appropriately developed IEP, . . .; or 2) properly complete the assessment in order to find her ineligible.").

It is undisputed that the Hearing Officer concluded that DCPS denied J.W. a FAPE by "exiting" her from "special education *without evaluating* her in all areas of suspected disability." HOD, ECF No. 35-2 at 42 (emphasis added). Despite this conclusion, the Hearing Officer did not order an evaluation of J.W. *See generally* HOD, ECF No. 35-2. In its effort to defend DCPS, the District attempts to characterize the condition placed on Ms. Wimbish to facilitate DCPS' entrance onto Stuart Hall's property as an "order" for psychological evaluations. Def.'s Mot., ECF No. 46 at 7. The District states that this condition was "for purposes of evaluation, observation, and inspection." *Id.* at 9. The HOD and the record does not support the District's characterizations. *See generally* HOD, ECF No. 35-2. The Hearing Officer ordered observations, interviews and other data

collection—not an evaluation. *Id.* at 44-45 ¶¶ 8-15. Furthermore, the Hearing Officer did not order further assessments of J.W. *Id.* at 24 ¶ 90.

"[A] reevaluation requires a new round of tests and analysis to evaluate the child." *James v. District of Columbia*, 194 F. Supp. 3d 131, 143 (D.D.C. 2016); *see also* 20 U.S.C. § 1414(b), (c) (outlining the requirements for a reevaluation). In *James*, the court found that DCPS' "failure to conduct a *new* comprehensive psychological evaluation of [the student] means that her IEP might not be sufficiently tailored to her special and evolving needs." 194 F. Supp. 3d at 144 (emphasis added). DCPS finds itself in the same situation for its failure to evaluate J.W. Therefore, the Hearing Officer erred in not requiring DCPS to evaluate J.W. because IDEA expressly provides that she was entitled to an evaluation before DCPS decided that she was no longer a child with a disability. *See, e.g.*, 20 U.S.C. § 1414(c)(5); 34 C.F.R. § 300.305(e)(1).

Accordingly, the Court reverses the portions of the HOD that improperly denied J.W. the appropriate relief for the District's IDEA violations. DCPS is ordered to conduct a full evaluation of J.W. in all areas of suspected disability. *See James*, 194 F. Supp. 3d at 144 (ordering DCPS to provide and fund a full evaluation of a child for its reliance on an outdated evaluation and failure to conduct a reevaluation). Furthermore,

if Ms. Wimbish disagrees with the evaluation, DCPS must fund an IEE. *See* 34 C.F.R. § 300.502(b) ("A parent has the right to an [IEE] at public expense if the parent disagrees with an evaluation obtained by the public agency[.]").

**V.    Conclusion**

For the reasons set forth above, the Court **GRANTS** Plaintiffs' motion for summary judgment and **DENIES** the District's cross-motion for summary judgment. A separate Order accompanies this Memorandum Opinion.

The Court **DISMISSES** without prejudice Counts II and V of the Complaint as moot. The Court **STAYS** Counts VI and VII of the Complaint until thirty (30) days after the date of this Memorandum Opinion.

**SO ORDERED**

**Signed:    Emmet G. Sullivan**
**United States District Judge**
**April 3, 2019**